UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
UNITED STATES OF AMERICA,

                                                        Docket No. S4 05 Cr. 1067 (KMK)

    - against -

ROBERTO MONTGOMERY, et. al.;

        Defendants.
_____X

## NARESH PITAMBAR'S MEMORANDUM OF LAW

                                      Denis Patrick Kelleher (DK-1414)
                                      Kelleher & Dunne LLP
                                      Attorneys for Naresh Pitambar
                                      17 Battery Place 11th Floor
                                      New York, NY 10004
                                      212-825-1700

**PRELIMINARY STATEMENT**

Naresh Pitambar ("Pitambar" or "defendant") respectfully submits this Memorandum of Law in further support of his application pursuant to Rule 29(b) and (c) of the Federal Rules of Criminal Procedure for judgment of acquittal ("JOA"). On April 10, 2007, jury selection commenced in this matter. On May 10, 2007, the jury acquitted Pitambar of one substantive count of bank fraud and one count of conspiracy to commit money laundering. Pitambar was convicted of one count of conspiracy to commit bank fraud.

A JOA is appropriate where, as here, the government failed to prove each and every element of the crimes charged beyond a reasonable doubt. Rather than proffer direct or circumstantial evidence of the crimes charged the government relied upon speculation and surmise, and offered nothing more than evidence "at least as consistent with innocence as with guilt." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2nd Cir. 1994). Therefore, even viewing the evidence in a light most favorable to the government, JOA is appropriate, as no rational juror could have found guilty Pitambar beyond a reasonable doubt. The government failed to prove Pitambar's membership in the conspiracy, his intent to commit this crime and his knowledge of it, and venue.

**FACTS**

Three witnesses testified against Pitambar: Natasha Singh ("Singh"), Special Agent Erik Rosenblatt ("Rosenblatt") and Special Agent Clint Ilges ("Ilges"). Based upon the testimony of these three witnesses and all of the bank records introduced into evidence on the government's case, the following facts were established at trial, even drawing all competing inferences in favor of the government: Singh testified that on or

about April 20, 2005, Singh's mother, Christine Richardson ("Richardson") gave Pitambar a $20,000 check payable to Pitambar's Citibank business account ("the business account"), Joe's Construction. The check was drawn from the Steven Riddick Sports Training account at RBC Centura and deposited into Pitambar's business account on April 20, 2005. However, Singh never testified to the actual conversation that occurred between Ptiambar and Richardson.[1] In fact, Singh never actually testified to what Richardson and Pitambar actually discussed. Furthermore, Singh never testified about whether Richardson told Pitambar it was a "bad" or fraudulent check, and other evidence established the check that Richardson gave Pitambar was not a forged check or contained a forged signature.[2] In fact, that $20,000 check had Steven Riddick's actual signature on the check.

On May 3, 2005, a check from Pitambar's business account for $10,000 payable to Amechi Fence was posted to his account. GX18A. On or about May 9, 2005, two wires from Pitambar's business account totaling $6,982.00 went to Daimler Chrysler to pay for two of Singh's and Douglas Shyne's cars. In the early part of June 2005, Pitambar complained to Citibank that these wires were unauthorized, and he subsequently filed a police report in the 106th Precinct of the New York City Police Department under complaint report number 3766 on June 16, 2005. GX 18D. On or about June 22, 2005, these wires were reversed and the entire amount was credited to Pitambar's business account. GX18D. On July 6, 2005, Richardson had a $6,970 bank check deposited into her account from Pitambar's business account.

---

[1] The entirety of Singh' direct testimony regarding Pitambar can be found at TT 261-272.
[2] Although Singh testified about "another check", it is entirely unclear if Richardson had that conversation with Shyne, not Pitambar. TT. 270. Therefore, as the government has failed to specify this testimony through their own witness, this statement cannot be used to infer Pitambar's guilt.

Rosenblatt testified that on February 9, 2006 Pitambar told Rosenblatt and Ilges that the check was for work he was going to perform on Richardson's kitchen. TT 1732-1738. After Rosenblatt left the room, Ilges asked Pitambar if he had been completely truthful and Pitambar said he had not. According to the relevant portion of Pitambar's post-arrest statement to Ilges, Pitambar stated that Richardson called one day and she asked him to do her a favor. TT. 1655. Pitambar stated to Ilges that he then asked Richardson if the check was a good check, and Richardson stated it was and Pitambar could keep $3,000. TT. 1656. Ilges further stated that Pitambar stated to Ilges he did not authorize the wire transfer out of his business account, and the defendant found out about the wire transfer after it occurred. TT p.1659-60. Finally, there was no evidence that any of the acts performed by Pitambar or Richardson with respect to Pitambar occurred in the Southern District of New York.

## ARGUMENT

Pitambar was charged and tried on three counts in the indictment: one count of conspiracy to commit bank fraud, one substantive count of bank fraud, and one count of conspiracy to commit money laundering. Pitambar was acquitted of the substantive bank fraud count and of the conspiracy to commit money laundering, but he was convicted of the conspiracy to commit bank fraud count. For the reasons below, the Court must enter a JOA as to this last remaining count.

"To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *United States v. Samaria*, 239

F.3d 228, 234 (2nd Cir. 2001) (citations omitted).  The government must also prove the future conduct agreed upon included all elements of the substantive crimes charged and to convict, "there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Id* (internal quotation marks omitted).  "[E]vidence that a defendant simply supplies goods [or deposits a check], innocent in themselves, to someone who intended to use them illegally is not enough to support a conviction for conspiracy." *United States v. Zambrino*, 776 F.2d 1091, 1095 (2nd Cir. 1985).  Nor does a defendant's presence at a crime scene or association with conspirators (even with knowledge of the conspiracy) prove intent to conspire. *United States v. Nusraty*, 867 F.2d 759, 763-4 (2nd Cir. 1989).

      Rule 29 empowers this Court to vacate the jury verdict and enter a JOA where the evidence is insufficient to sustain the conviction with respect to this one count.  The standard is "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "Nonetheless, a conviction based on speculation and surmise alone cannot stand.  In particular, the government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt.  Therefore, the government must do more than introduce evidence 'at least as consistent with innocence as with guilt.'" *United States v. D'Amato*, 39 F.3d 1249, 1256 (2nd Cir. 1994) (citations omitted).

      To convict Pitambar of conspiracy to commit bank fraud, the government was

5

required to prove an illegal agreement existed between Pitambar and Richardson, and Pitambar knowingly and willingly participated therein. The government failed to do so. Singh never testified that Richardson said anything to Pitambar that a juror could rationally infer that Pitambar knew of the scheme to defraud or knew the $20,000 check came from another fraudulent check. During the Rule 29(a) argument, the government relied heavily upon the fact Pitambar was going to make $3,000. TT.2128. However, without more testimony or evidence, this fact is not enough. The lack of specifics in Singh's testimony about the conversation between Pitambar and Richardson is what dooms this count. Although suspicious, making $3,000 for depositing a check is simply not a crime. The testimony on this subject is devoid of any specifics, and the government speculates that this fact means Pitambar must have known. However, making $3,000 can have equally innocent explanations as guilty ones. *D'Amato*, supra. It is not Pitambar's burden to speculate what Richardson told Pitambar about the check and all the possible innocent scenarios; it is the government's burden to have at least some testimony on the topic and not to speculate.

Furthermore, the Court instructed the jury in order for Pitambar to be convicted of this count, they must find that the object of this conspiracy count was to commit bank fraud and that bank fraud is a scheme to defraud a federally insured bank. Based upon the Second Circuit's decision in *United States v. Rodriguez*, 140 F3d 163 (2d Cir. 1998), this Court must grant this motion.

"[T]he 'scheme to defraud' clause ... requires that the defendant engage in ... a pattern or *course of conduct designed to deceive* a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing

6

it to *actual or potential loss. Stavroulakis,* 952 F.2d at 694". *Rodriguez* at 167. "A course of conduct consisting of simply depositing checks into a bank account where the depositor knows that he/she is not entitled to the funds does not alone constitute false or fraudulent pretenses or representations." *Id.* at 168. The Second Circuit dismissed the substantive count of bank fraud against *Rodriguez*. This Court must do likewise based upon the facts of this case and their similarity to the facts of *Rodriguez*. Pitambar simply deposited a check, and unlike *Rodriguez*, there was no proof Pitambar knew he was not entitled to the funds. Furthermore, Pitambar took a RBC Centura check, not a Wachovia check. Thus, there was no evidence that Pitambar intended to victimize Wachovia Bank, the bank charged in the indictment. As the $20,000 check was not stolen from Steven Riddick and it was actually endorsed by Steven Riddick, the evidence the government produced is insufficient. *Id* at 169.

Besides Singh, the government relied heavily on Rosenblatt's testimony about the "false exculpatory": that Pitambar initially said the $20,000 check was to perform work on Richardson's kitchen. In *United States v. Nusraty*, 867 F2d 759, 765 (2d Cir 1989) and *United States v. Samaria*, 239 F3d 228, 236 (2d Cir 2001), the Second Circuit clearly held that falsehoods told by a defendant to law enforcement is not enough to convict where the other evidence of guilt is weak, as is the case here.

Finally, the government's case failed to establish venue.[3] In *United States v. Saavedra*, 223 F.3d 85 (2d Cir.2000), the Second Circuit held that when venue may properly lie in more than one district under a continuing offense theory, we should also ask "whether the criminal acts in question bear 'substantial contacts' with any given

---

[3] Although the facts are different, Pitambar joins in the motion filed today by co-defendant Roberto Montgomery on venue.

7

venue." Id. at 93 (quoting *Reed,* 773 F.2d at 477). The substantial contacts test "takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id.* Here, the government relies upon one check to a co-conspirator not on trial as the basis for venue in the Southern District of New York. TT. 2145. Based upon all the documents admitted at trial, all the testimony taken over this one-month trial, and all the checks written by Singh and Shyne and others, it is ridiculous that the government's clings to venue on one check given to Jason Watler. None of Pitambar's acts are alleged to have been committed in the Southern District, and one check to Watler does not satisfy the substantial contacts test.

## **CONCLUSION**

For the reasons stated herein, Pitambar respectfully requests a judgment of acquittal pursuant to Rule 29(a), (b) or (c).

Dated: June 11, 2007  KELLEHER & DUNNE LLP
       New York, New York  *Attorneys for Naresh Pitambar*

       By: _____/s/_____
       Denis P. Kelleher (DK 1414)
       17 Battery Place, 11th Fl.
       New York, NY 10004
       212-825-1700