UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
UNITED STATES OF AMERICA,

                                                         Docket No. S4 05 Cr. 1067 (KMK)

- against -

ROBERTO MONTGOMERY, et. al.;

       Defendants.
_____X


## NARESH PITAMBAR'S RULE 29 REPLY

                                                 Denis Patrick Kelleher (DK-1414)
                                               Kelleher & Dunne LLP
                                               Attorneys for Naresh Pitambar
                                               17 Battery Place 11th Floor
                                               New York, NY 10004
                                               212-825-1700

Naresh Pitambar ("Pitambar") submits this reply to the government's response to his Rule 29 motion under Federal Rules of Criminal Procedure ("Rule 29")[1]. Based upon the government's submission, the Court must grant the instant motion. The government relies upon unfounded inferences regarding Pitambar's knowledge and intent, and they failed to adduce the necessary testimony from Natasha Singh ("Singh") to satisfy the elements of the only count he was convicted: conspiracy to commit bank fraud.

In an act of desperation, the government clings to the "false exculpatory" made by Pitambar in an effort to save the lack of testimony they adduced from Singh. In fact, the government never actually disproved Pitambar's statement to the agents that Richardson said it was a "good check". Singh never testified what Richardson told Pitambar about the actual check and why he needed an excuse if someone came asking questions. Richardson could have said she needed Pitambar to do this "favor" because all her bank accounts are frozen due to outstanding judgments. Richardson could have asked Pitambar to do him this "favor" and cash this "good check" so the IRS cannot levy it against back taxes due. The government wants this Court to believe that there is one and only one inference to be drawn from the false exculpatory and the receiving $3,000. That simply is not the case.

Although Pitambar initially lied to the agents on the day of his arrest, it is of no relevance since the government still has to prove knowledge and intent, even when a defendant lies to law enforcement. As this stated in *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975):

> [F]alsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to

---

[1] Pitambar also joins Roberto Montgomery's arguments regarding the standard of review of Rule 29, specific intent and venue.

> convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.

It is well settled in the Second Circuit that although "a conviction may be based solely on <u>reasonable</u> inferences drawn from circumstantial evidence, a conviction cannot rest on mere speculation or conjecture." *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996) (emphasis added). In other words, the government must do more than simply introduce evidence "at least as consistent with innocence as with guilt." *United States v. D'Amato*, 39 F3d 1249, 1256 (2d Cir. 1994). As another court put it, "to be sufficient, the evidence in a case of this sort must be <u>substantial</u> and must do more than raise a mere suspicion of guilt." *United States v. Maura*, 778 F. Supp. 835, 838 (D. Md. 1991)(emphasis added) (reversing a counterfeiting conviction, even though defendant's furtive acts and false exculpatory statements supported the inference that defendant knew he wrongly possessed a check, because the evidence did not support the further <u>inference</u> that the defendant <u>knew</u> the check was counterfeit). Here, the government never proved Pitambar knew the $20,000 check was part of this bank fraud conspiracy.

The government attempts to bolster their lack of evidence in one piece of testimony by Singh suggesting Pitambar wanted to "do another check". The government cut and paste pieces of the relevant testimony. In its entirety, it reads as follows:

> Q. What did she tell you?
> A. She said that she had a conversation with Joe saying that why you try to smart people like that, you never mentioned anything if you change your mind and taking the money out and like that, and now they need their money, the man is upset he needs his money. And then there was conversation about he doing another check, mom was talking to him about making decision about doing another check, she said to him --
> Q. Your mother was speaking about another check?
> A. My mother was talking about Joe about doing another check

3

> so she said to me she told him how would you want to do another check with the people if you are not giving them the money that is due to them.
> Q. Did she tell you what the end result of that conversation was?
> A. She said that he brought her a bank check and she deposited and that is how she got the cash to bring to us.[2]

Here, the government would suggest that in the same conversation Richardson confronts Pitambar about "changing his mind" (referring to reversing the wire to Chrylser and filing a police report) Pitambar asks Richardson to deposit another check for a fee. Furthermore, without putting any time frame on this conversation, Singh says she was talking to her mother "about Joe" doing another check, not "to Joe" about doing another check. Richardson is more than likely referring to a conversation she had with Douglas Shyne ("Shyne") in that how could Shyne want to do another check with Pitambar if Pitambar is going to reverse the Chrylser wire on Shyne. In fact, the government's argument makes no sense. It is uncontested that Pitambar reversed a wire paying for Shyne's and Singh's car. The government is now suggesting that in the aftermath of that and while also filing a police report, Pitambar asks to do another check after Richardson accuses Pitambar of "smarting people" when Pitambar allegedly knew about the object of this conspiracy. Frankly, it is the government's obligation and burden to clarify pronouns used in the transcript if these pronouns are so vital to their evidence in chief. The inferences drawn from this testimony are actually more consistent with Pitambar's version than the government's.[3]

The Second Circuit has frequently declined the government's invitation to adopt similarly tenuous inferences. *See, United States v. Wiley*, 846 F.2d 150 (2d Cir. 1988)

---

[2] Trial Transcript page 270.
[3] Even assuming Singh was referring to Pitambar and not Shyne, it is irrelevant because the government never established Pitmabar's state of mind in cashing the initial check as there is no testimony about what Richardson said to Pitambar why she needed Pitambar to deposit it.

4

(reversing defendant's conviction for aiding and abetting a wire fraud scheme since "the jury must have engaged in false surmise and rank speculation") *United States v. Javino*, 960 F.2d 1137 (2d Cir. 1992) (holding that evidence establishing that an incendiary device had been constructed from a fruit juice jar bearing a domestic brand label did not support a finding that the device was made in the United States).

In *United States v. Wiley*, the masterminds of two separate schemes to defraud distributors of home energy and home security services had hired the defendant to implement a training program designed to assist distributors in hiring their own sub-distributors. 846 F.2d at 152. The government's evidence of defendant's involvement in the home security scheme consisted of three checks to the defendant drawn on the home security corporate account, his admission that he had conducted a training session (but no proof regarding his statements at the training session), and his definite membership in the separate home energy scheme. *Id* at 154-55. The Second Circuit concluded that, even drawing all reasonable inferences in the government's favor, no juror could rationally infer that defendant aided and abetted the home security fraud. *Id* at 155.

As the Fifth Circuit has explained in a similar case, although the government may prove a guilty mind circumstantially, "the use of circumstantial evidence does not relieve the government of its burden of establishing the elements of the offense beyond a mere likelihood or probability." *United States v. Beckner*, 134 F.3d 714, 719 (5th Cir. 1998). In *United States v. Beckner*, the court reversed an attorney's conviction for aiding and abetting his client's securities fraud, where the government failed to demonstrate that the attorney had knowledge of his client's fraud and thus, the requisite criminal intent. *Id* at 718-19. Similar to the case at bar, the government contended that the attorney's receipt of

his legal fees directly from the funds of investors revealed his knowledge of the fraud. *Id*. The court conceded that "it may be unconventional to receive fees in this manner," but held that such payment could not "in any way" establish knowledge of the client's fraud. *Id* at 720.

Pitambar's conviction, in essence, rests impermissibly upon a pile of inference upon inference -- a practice that courts have repeatedly disapproved. *See, United States v. Guzzino*, 810 F.2d 687, 696 (7th Cir. 1987) (holding that "a verdict based on circumstantial evidence must not rest solely on the piling of inference upon inference"); *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996) (stating that a verdict may not rest on "an overly attenuated piling of inference upon inference"); *United States v. Villegas*, 911 F.2d 623, 628 (11th Cir. 1990). When the speculation from the government's evidence is removed, little probative evidence remains.

In like situations, courts have reversed convictions because the government's evidence failed to adequately establish knowledge or specific intent. *United States v. Gallishaw*, 428 F.2d 760, 762-63 (2d Cir. 1970); *United States v. Pearlstein*, 576 F.2d 531 (3d Cir. 1978) (reversing the mail fraud convictions of salesmen where there was no substantial evidence from which the jury could have inferred that the salesmen were or should have been aware of the false and misleading aspects of their employer's promotional scheme, even though the salesmen "went beyond" the promotional scheme and made independent false representations to customers); *United States v. Parker*, 839 F.2d 1473, 147 8-79 (11th Cir. 1988).

In *United States v. DiStefano,* 555 F.2d 1094, 1103 (2d Cir. 1977), this Court held that an even greater quantum of evidence than that presented against Pitambar was

6

insufficient to establish that a defendant knowingly agreed to commit a crime or "consciously assisted the commission of the specific crime in an active way." There, a co-conspirator had testified that he sent the defendant into a bank, on the pretext of changing a dollar, to see if a guard was present and if the bank cameras had been moved, although the co-conspirator could not recall how he instructed the defendant to do so. *Id* at 1098, 1103. The co-conspirator further testified that on the defendant's return from the bank, the defendant indicated by "a nod or something like that" that there was no guard and the cameras had not been moved. *Id* at 1098, 1103. Finally, the defendant gave false exculpatory statements when questioned by law enforcement. *Id* at 1104.

The Second Circuit recognized that the defendant may have acted "with some awareness that some illegal venture was contemplated by her companions," but nonetheless held that this evidence was insufficient to support the inference that the defendant knew that a bank robbery was planned and intended to participate in it by 'casing' the bank and also reversed defendant's aiding and abetting conviction on similar grounds. *Id* at 1103-04. Here, armed only with one false exculpatory statement and no co-conspirator to establish the parameters of this scheme, the government has not met their burden.

Based upon all the above-stated reasons, the Court must grant Pitambar's Rule 29 motion.

Dated: New York, NY
       September 4, 2007

>                                         Respectfully submitted,
>
>                                         _____/s/ Denis Kelleher
>                                         Denis P. Kelleher (DK-1414)
>                                         Kelleher & Dunne LLP
>                                         17 Battery Place 11th Floor
>                                         New York, NY 10004
>                                         212-825-1700