UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    - v. -<br><br>NARESH PITAMBAR,<br><br>            Defendant. | 05 Cr. 1067 (KMK) |

## NARESH PITAMBAR'S SENTENCING MEMORANDUM

Naresh Pitambar ("Pitambar") submits this sentencing memorandum to present certain objections and issues for the Court's consideration in advance of Pitambar's January 11, 2008 sentencing.  By this memorandum, Pitambar objects to certain aspects of the Pre-Sentence Investigation Report ("PSR"). Specifically, the defendant objects to the PSR's advisory guidelines calculation regarding loss, and also requests the Court reduce Pitambar's advisory guidelines based upon his role in the offense.  Pitambar also requests the Court impose a non-guidelines sentence pursuant to *Gall v. United States*, 2007 WL 4292116, *Kimbrough v. United States*, 2007 WL 4292040 and *United States v. Booker*, 543 US 220 (2005).  Finally, Pitambar requests the Court impose the lowest possible sentence allowable under the law.  Specifically, Pitambar requests the Court not impose any period of incarceration.

## I. AMOUNT OF LOSS

As the Court knows from presiding over this trial and Pitambar's post-trial motions, the government's evidence established that Pitambar received a $20,000 check

from Natasha Singh's ("Singh") mother, Christine Richardson ("Richardson"). That $20,000 check came from a $55 altered by Singh and/or Douglas Shyne ("Shyne") to reflect $375,000. However, there is absolutely no evidence or testimony that Pitambar knew about or was told about the $375,000 altered check. Singh did not state that Richardson told Pitambar this, and there is no other evidence to suggest this. Despite this complete lack of evidence, the PSR enhances Pitambar's guidelines calculation by 12 levels for "intended loss" of $375,000. Pitambar objects to this 12 level enhancement.

In order to make this finding for purposes of the guidelines, the Court is required to make two particularized findings under the so-called *Studley* prongs: (1) the scope of the specific criminal activity to which the defendant agreed and (2) the relevant conduct on the part of the co-conspirator was foreseeable to the defendant. *United States v. Studley,* 47 F.3d 569, 574 (2d Cir.1995); *see also, United States v. Johnson,* 378 F3d 230 (2d Cir. 2004); *United States v. Mulder*, 273 F3d 91 (2d Cir. 2001). Here, the evidence at trial fails to meet either prong. The only evidence the government adduced is Richardson asked Pitambar to deposit a $20,000 where he could keep $3,000. Thus, that is the scope of the criminal activity even in a light most favorable to the government. Furthermore, as the government did not provide any testimony at trial that Pitambar was told the $20,000 check came from a $375,000 check, there is no possible way it could be "reasonably foreseeable" to Pitambar.

Furthermore, in *Studley,* the Second Circuit identified several principles and factors relevant to determining the scope of jointly undertaken criminal activity. Mere "knowledge of another participant's criminal acts" or "of the scope of the overall operation" will not make a defendant criminally responsible for his co-defendants' acts.

*Id.* at 575. Also, it is more likely that an activity has been jointly undertaken if "the participants pool their profits and resources" and do not work independently. *Id.* Another sign of a joint undertaking is "the defendant['s] assist[ance] in designing *and* executing the illegal scheme." *Id.* None of these factors are present in Pitambar's case. The defendant in *Studley* was convicted of mail fraud for his participation in a telemarketing scheme. Despite working in a boiler room setting with approximately twenty others co-workers who were also participating in the telemarketing fraud at the same time, the Second Circuit held that was not enough to hold *Studley* responsible for the loss caused by other participants in the boiler room. Based upon the government's case, Pitambar was one spoke in a huge wheel created by Shyne, Singh and Richardson. There is simply no evidence to establish Pitambar's knowledge that the $20,000 check came from a $375,000 altered check.

Although the Court could enhance Pitambar's guidelines by 4 levels for loss of more than $10,000, the Court should consider using Pitambar's gain of $3,000 as the more accurate reflection of loss. As the government has continually argued, it is Pitambar's gain of $3,000 from depositing the $20,000 check that demonstrated his knowledge that the $20,000 check was fraudulent. The $3,000 gain is the key fact that makes Pitambar guilty according to the government and the Court, and therefore, it is a more accurate reflection of his culpability. Although the application notes state gain should only be used when loss cannot otherwise be determined, that is only advisory.[1]

---

[1] Furthermore, if the Court finds only $3,000 in loss by using his gain, this may make this conviction a non-aggravated felony for immigration purposes. See. 8 USC 1101(a)(43)(G) & (M).

## II. ROLE IN THE OFFENSE

The PSR reduces Pitambar's guidelines by 2 levels for minor role; however, as Pitambar was a minimal participant, his advisory guidelines calculation should be reduced by at least 4 levels. "The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." USSG 3B1.2 Application Note 4.  Clearly, Pitambar did not know the complexity of Shyne's organization.  He was a small cog in the vast machine Shyne and Singh created where he was not told about the existence of all the other participants and methods to create these checks.   Based upon this, the Court should reduce Pitambar's advisory guidelines by at least 4 levels based upon his role in the offense. *See United States v. Restrepo*, 936 F2d 661, 667 (2d Cir. 1991).

## III. 18 USC 3553(a) FACTORS

Clearly, based upon *Booker*, *Gall* and *Kimbrough*, the Court has the power and discretion to sentence a defendant outside the advisory guidelines range based upon identifiable factors, and the Court's decision will only be reversed for an abuse a discretion.  As the Supreme Court stated on December 10, 2007, a sentence outside the guidelines range is not to be presumed "unreasonable".  Even if the Court does not grant any of Pitambar's arguments above, the combination of these factors must be considered under the factors codified under 18 USC §3553(a).

Viewing Pitambar's situation and his offense in totality, a period of probation and restitution is a reasonable and sufficient sentence that is not greater than necessary to achieve the objectives codified under 3553(a).  Pitambar's is a person of low-intelligence and is a functional illiterate who supports his family with the modest income he makes.

PSR ¶75 & 89.  He also has a small child with a heart condition that will possibly require

more surgery.  PSR ¶81 and Exhibit A[2].  A period of probation and restitution will satisfy

the sentencing objectives under 18 USC 3553 as jail is not the sole way to achieve

deterrence.    Based upon his minimal role, his criminal history category and these other

factors, Pitambar requests the Court impose no incarceration.  Pitambar would also

request the fine be waived.

　　　　Thank you for your consideration in this matter.


　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　Denis Kelleher (DK-1414)

Cc:　　AUSA Levy & Perry (via ECF)
　　　　All Defense Counsel (via ECF)

---

[2] This is the 2004 operative report for Pitambar's son who was born on 4/22/04.  The Court also has the discretion to use Pitambar's son's condition as the basis for a downward departure based upon "extraordinary family circumstances.  *See e.g., United States v. Alba*, 933 F2d 1117 (2d Cir. 1991)